## A. B. DICK CO. v. SHALLCROSS CO., Inc.
### No. 336.

Circuit Court of Appeals, Second Circuit.
June 9, 1930.

Otto Munk, of New York City (Charles L. Sturtevant, Eugene G. Mason, and Herbert H. Porter, all of Washington, D. C., of counsel), for appellant.

·Archibald Cox, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The complainant was granted a preliminary injunction by Judge Coxe restraining defendant from infringing United States patent No. 1,526,982. The claim of the patent relied on is claim 18, which reads as follows:

"18. A stencil-sheet adapted for conversion into a stencil by the impact of type and the like thereon, the same comprising an open-texture base having a coating including a cellulose ester and a tempering agent."

The invention relates to stencil sheets, and calls for a base of Japanese paper, known as Yoshino, coated with a cellulose ester. In order to produce this coating, the paper is treated with a solution of the cellulose ester in a suitable solvent. The nitrocellulose material recommended in the specification is pyroxylin enamel, which is a solution of nitrated cellulose having the approximate consistency of ordinary molasses and to this is to be added a pigment such as zinc oxide. To a given quantity of pyroxylin "a suitable proportion (fifty per centum will give good results) of a tempering agent such as an oil," is added for the purpose of preventing "the pyroxylin enamel from drying too hard." The patentee says that for this tempering agent he prefers "to use castor oil or a similar oil having the power of forming with the cellulose ester and its solvent a homogeneous body." He also suggests the addition of "a suitable quantity of a material, for example, soya bean oil, of such character as to hasten the setting of the coating mixture when applied." He further says that he has "found it advantageous also to add to the mixture a limited proportion, say five to ten per centum, by weight, of some fatty or tallow-like ingredient of either animal or vegetable origin (lard, cottolene, Chinese vegetable tallow, etc.) to serve similarly as a setting agent, but more particularly as a preservative of the proper consistency of the finished coating and to aid also in retaining the composition in the desired state of softness, fluency and displaceability."

The inventor goes on to recommend "Zapon lacquer enamel No. 340" as the cellulose ester which may usefully be employed because it requires but little reducing by a solvent, and says: "If, because of the price of, or variation in, commercial pyroxylins, it is preferred to employ ʹ * * * the simple compound of cellulose nitrate in a solvent such as amylacetate, the cellulose content of the solution may be from five to seven or eight per cent. This may be increased or decreased as required by the character and proportions of the other ingredients added thereto."

It is evident from the foregoing that the patent is limited to no formula, but only teaches that a proper coating for dry stencil sheets should have a small percentage of nitrocellulose and a large percentage of soft materials of an oily character. Indeed the specification closes with the words: " * * * The invention is not limited to the details above described but * · * * comprehends broadly a stencil sheet * * * having as its essentials a base, such as Yoshino, provided with a coating which includes, or is derived from, a cellulose compound or its equivalent, this being so modified as to make it substantially stable for the purpose designed and responsive to pressure for the production of stencil openings of character suitable for the passage of ink therethrough."

Moreover, the setting agents and the pigment, when added to the pyroxylin solution, would be bound to vary substantially the proportions of the cellulose content of the coating.

Stencil sheets of the Broderick and Fuller types had long been in use, but all had serious drawbacks. The early wax-coated sheets of Broderick were fragile, and the gelatin-coated ones of Fuller had to be moistened before use. The Hill stencil sheet largely displaced the others, because he taught how to make a coating that would for a long time remain type-impressible without requiring any moistening. The special characteristic of nitrocellulose is that a *small* proportion is sufficient to impart the necessary strength, integrity and binding quality to a composition having the large percentage of permanently soft materials necessary to make a stencil sheet that will remain type-impressible without moistening.

The defendant's stencil sheets have a coating which contains (a) a small amount of nitrocellulose; (b) a large amount of oleic

acid calculated to keep the mixture soft enough to be type-impressible; (c) a quantity of shellac claimed by the defendant to be the major binding ingredient of the coating and to be an element that makes a stronger sheet than one employing nitrocellulose without shellac.

The defendant contends that it does not infringe (1) because the dominant ingredient of its coating is shellac rather than nitrocellulose; (2) because oleic acid is not, like castor oil mentioned in the patent, a real oil which has the "power of forming with the cellulose ester and its solvent a homogeneous body"; and (3) because its particular coating departs too widely from the proportions of nitrocellulose suggested in the patent.

The patent was sustained by us in A. B. Dick Co. v. Simplicator Corporation (C. C. A.) 34 F.(2d) 935, in an opinion fully discussing the prior art. We there held that the invention was a meritorious one and that its prime feature was that it dispensed with the necessity for temporarily moistening stencil sheets before use.

It may be said at the outset that there is important evidence of a general sort that the defendant appropriated the Hill invention. Shallcross testified that in his work with shellac he was acquainted with the United States patent No. 1,304,120 to Thomas. Thomas used a coating of gum shellac with about 30 per cent. of castor oil and no nitrocellulose. It is evident from the proofs that shellac alone would not serve as a sufficient binder and would produce a coating inadequate for the required purpose. Moreover Thomas apparently did not intend to make a dry stencil sheet, for he says: "It may be softened so as to enable types to write stencils on it, by moistening with a solution of borax in water." P. 1, I. 49. Shallcross turned from the shellac stencil of Thomas to one where nitrocellulose was employed as a binder. Indeed he several times describes it as a "binder" in his own patent No. 1,674,611, under which the infringing stencil sheets are made. That he must have had the Hill patent before him and at all times in his mind seems plain, for in his own specification, he substantially copied long passages and in it declared, as had Hill, that "the coating remains throughout an extended period of time practically *unchanged,* and without preliminary moistening is capable of being removed or displaced, as by the blow of the type of a writing machine, or by the pressure of a hand stylus, from or on the underlying foundation *sheets.*" These words follow literally the earlier patent of Hill (who first perfected a dry stencil sheet) with the substitution of the word "unchanged" for "unchanging," the unnecessary insertion of the verb "is" and the use of the plural "sheets" for the singular "sheet." A patentee more absorbed in the invention of his predecessor than Shallcross can hardly be imagined.

It is unnecessary to determine whether the use of shellac as an ingredient strengthens the stencil coating, as defendant says it does, or whether it has no such effect and is a mere substitute for the preferred additional ingredient of lard which Hill recommended as a "setting agent." Nor is it important to say whether such a stencil sheet as Shallcross describes in his patent involves a patentable invention. At best his patent would be no more than an improvement over Hill, for it is in terms covered by claim 18 supra. That claim only calls for "a coating including a cellulose ester and a tempering agent." A cellulose ester the defendant admittedly uses. He employs oleic acid as a tempering agent. It softens the pyroxylin so that it will not become hard like enamel after the evaporation of the solvent and has an effect similar to the castor oil recommended both in the patent to Hill and the patent to Shallcross. But Hill's specification does not require that castor oil or any oil shall be used. It says: "To a given quantity of this pyroxylin I add a suitable proportion * * * of a tempering agent *such as* oil. * * *" Moreover, even if oil itself were intended as the tempering agent for Hill's stencil sheets, the test of what is oil is not the chemical meaning of the word but its general meaning, so long as the ingredient used is "such as an oil" and serves the purpose of a tempering agent. Oleic acid is commonly spoken of as oil, and is a satisfactory tempering agent. Defendant's criticism that oleic acid does not have "the power of forming with the cellulose ester and its solvent a homogeneous body" as provided in the patent is open to the same objection. The homogeneity referred to is not chemical but practical, and such homogeneity defendant's coating attains.

The defendant contends that the percentages of nitrocellulose mentioned in the Hill patent mark the limit of his invention, and says that it uses a much smaller percentage in its coating. Doubtless there would be a minimum of nitrocellulose that would be insufficient to integrate the composition and make a dry type-impressible coating and such a proportion would be outside of the scope of the patent. But the proofs here show that

the nitrocellulose used by defendant acts as an adequate binder to strengthen and integrate the entire coating and effects the same result as that indicated in the Hill patent. Moreover the proportion of nitrocellulose used by defendant is close to that in the Zapon lacquer enamel No. 340 recommended by Hill. While the percentages of the alternative solution suggested at page 2, lines 34 to 41, of the Hill patent, seem to show a larger proportion of nitrocellulose than the defendant uses, they would necessarily vary in the dry product according to the amount of oil, pigment, or lard which might be added. The patentee had this contingency in mind, and provided in his specification that the percentages of the solution "may be increased or decreased by the character and proportions of the other ingredients added." If the percentages suggested in the patent be regarded as in any way determinative of the scope of the invention, we think that the defendant has approximated them sufficiently to render his Halco stencil sheets infringing articles.

The defendant uses nitrocellulose as a binder for the oil and uses it in substantially the same way as did Hill. Both employed a small amount of nitrocellulose with a large amount of oil. Defendant's Halco stencil sheets clearly infringe claim 18. Indeed this seems so plain to us that we should have added nothing to the excellent opinion of the District Judge but for the earnest argument of defendant's counsel that the real scope of the patent was misunderstood by the court below.

Decree affirmed.