**ARLAC DRY STENCIL CORPORATION et al. v. A. B. DICK CO.**

No. 4450.

Circuit Court of Appeals, Third Circuit.

Feb. 17, 1931.

---

Brown & Critchlow, of Pittsburgh, Pa. (Jo. Baily Brown, of Pittsburgh, Pa., and N. S. Amstutz, of Valparaiso, Ind., of counsel), for appellants.

Archibald Cox, of New York City, for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

WOOLLEY, Circuit Judge.

A. B. Dick Company, assignee of Letters Patent No. 1,536,982, issued to Edward W. Hill, brought this suit for infringement. From an interlocutory decree holding certain claims valid and infringed, the defendants appealed.

The patent is for a "stencil-sheet" which in its elemental form is a sheet of paper, of typewriter size, so prepared that letters can be cut or impressed upon its surface by the letter-hammers of a typewriter and, when completed, the stenciled words can be reproduced on a plain sheet placed beneath it by passing an ink roll over the stencil-sheet in the way metal stencils are operated. This is called manifolding, sometimes mimeographing, and permits of the reproduction of the same writing many times, hence its extensive use in mail advertising. From the very imperfect stencil-sheet of forty years ago there has grown an important art in which millions of stencil-sheets are sold annually.

Simple as the thing seems, it presented at the beginning several problems which inventors found difficult to solve.

In preparing stencil-sheets adapted for the reproduction of typewritten words it was, of course, found wholly impracticable to cut letters straight through the sheet, for in the stenciling operation the ink would spread upon the nether sheet, blurring the letters, and would soak into the stencil-sheet itself, soon rendering it useless. Moreover, some means had to be provided to hold in place the centers of loop letters—a, b, c, d, q, p—for if the type of such letters were to perforate the sheet their centers would inevitably drop out. So a sheet of delicate lace-like paper with long fibers, open texture and as full of pores as possible, such as the Japanese paper called "Yoshino," was resorted to for a base. It was then sought to spread on the upper surface of such paper a composition of matter that would have several necessary qualities and would do several things. It would seem that the surface coating must be of a consistency solid enough to be impervious to ink, strong enough to stand handling and use in machines, dry enough to toughen it yet moist enough to prevent it from becoming brittle or inflexible, fluent enough to fill the pores of the paper and adhere to the sheet yet firm enough to be cut sharply and displaced completely by the tap of the type of the typewriter without injury to the fiber of the paper, bringing the paper into view (through the open typed letters) ready to receive and transmit the ink through its pores to the blank sheet beneath.

For such a material the art first used wax (Broderick) and modifications of it. Wax was type-impressible but too fragile to meet other requirements. The art next turned to gelatin, tanned to toughen it, with glycerin to soften it (Fuller), probably the first use of a "tempering agent." This was an improvement over wax but objectionable because it dried out quickly and required wetting to make it type-impressible at the time it was used. Then came the suggestion in Campion's Belgium patents of adding to waxed sheets a coating of pharmaceutical collodium, sometimes called "new skin," and later celluloid (important because nitrocellulose products), together with castor oil (about 6 per cent.) to soften it or "temper" its rigidity. Next came Gestener with a pyroxylin or celluloid solution to toughen the Yoshino sheet fibers and with gelatin as a coating. And, more recently, and most important perhaps, was the alleged prior use by Father Calhoun, a teacher of chemistry in Catholic colleges, who testified to his use of stencil-sheets made of various nitrocellulose compounds tempered by castor oil in manifolding examination papers. This testimony from memory was regarded as lacking that particularity as to composition and certainty as to product which is necessary to render his work an anticipation.

Finally, in 1925, came the Hill patent in suit. Here there is no uncertainty as to the invention claimed. The patentee recites enough of the prior art to show that he knew what he was about and to show particularly the use and function of tempering agents. He discloses, and claims in various forms, a stencil-sheet of a Yoshino base, coated with a cellulose ester, preferably pyroxylin enamel, which is a solution of nitrated cellulose in a suitable solvent and in which a pigment such as zinc-oxide has been incorporated. This composition, alone, is not workable, for when dry it is hard and horny. So to soften it and keep it pliable he added "a suitable propor-

tion (about 50 per cent.) of a tempering agent such as oil," preferably "castor oil or a similar oil having the power of forming with the cellulose ester and its solvent a homogeneous body." To all this may be added (but under the broad claims is not required) a small amount "say from five to ten per centum, by weight, of some fatty or tallow-like ingredient" to serve as a setting agent and more particularly to aid in retaining the required softness of the mass.

On this patent the plaintiff sued Simplicator Corporation and Martin S. Herbert in the District Court of the United States for the Southern District of New York [30 F. (2d) 713], whose decree for the plaintiff was affirmed by the Circuit Court of Appeals for the Second Circuit, holding claims 2, 3, 4, 6, 7, 8, 9, 11, 12, 13, 14, 16, 18, 21, and 22 valid and infringed in an opinion reported in 34 F.(2d) 935, to which we refer for a more complete history of the art and a more detailed statement of the patent.

Immediately after that decree the same plaintiff brought this suit on the same patent, charging infringement of the same claims, against Arlac Dry Stencil Corporation and Verne R. Shattuck, who, though not parties to the suit in the Second Circuit, were admittedly privies to the defendants and actively participated in the defense.

The learned District Court held the decree of the Circuit Court of Appeals for the Second Circuit res judicata of all the issues in this case and, irrespective of that holding, found on the merits that the defendants infringe the narrow claims, which call for specific tempering agents, by using an agent within their equivalency, and infringe necessarily the broad claims which call for tempering agents but do not specify them, of which claim 18 is typical:

"A stencil-sheet adapted for conversion into a stencil by the impact of type and the like thereon, the same comprising an open texture base having a coating including a cellulose ester and a tempering agent." ·

For the fundamental law of res judicata we refer, of course, to Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195. Looking for the essential identities (3 Bouvier Law Dict. 2910) and regarding the parties-defendant in this suit as responsible privies to the suit in the Second Circuit, Hart Steel Co. v. Railway Supply Co., 244 U. S. 294, 37 S. Ct. 506, 61 L. Ed. 1148; Gilchrist Co. v. Erie Specialty Co., 231 F. 659, 663 (C. C. A. 3rd); Id., 242 U. S. 630, 37 S. Ct. 15, 61 L. Ed. 537, the records in the two cases disclose identity of parties of the same quality with identity of interests; also identity of causes of action and of subject matter, namely; infringement of claims of the Hill patent.

The defendants maintain, however, that, as in most patent cases, there were two matters or issues in the first suit, that of validity of the claims, in respect to which they admit the decree is res judicata of that issue in this suit, Lander v. Mercantile Bank, 186 U. S. 458, 22 S. Ct. 908, 46 L. Ed. 1247; Bemis Car Box Co. v. J. G. Brill Co., 200 F. 749, 751 (C. C. A. 3rd); Id., 226 U. S. 614, 33 S. Ct. 326, 57 L. Ed. 382, and that of infringement by a composition of matter (cellulose nitrate and castor oil) different from that charged as infringement in this suit (cellulose nitrate, oleic acid, or red oil, and glycerin), and therefore urge that, while concluded by the decree in the first suit to contest the validity of the claims, they are not prevented by that decree, holding infringement by one composition, from contesting infringement charged in this suit by a new or different composition, and thus trying the issue of infringement upon a different state of facts, distinguishing Hubbell v. United States, 171 U. S. 203, 209, 18 S. Ct. 828, 43 L. Ed. 136. To that end, the defendants claim they may go back and review the evidence (which is much the same in the two cases) to show the state of the prior art for the purpose of narrowing and restricting the scope of the claims so that their product may escape infringement. Westinghouse v. Formica, 266 U. S. 342, 45 S. Ct. 117, 69 L. Ed. 316; D'Arcy v. Staples (C. C. A.) 161 F. 733.

But, as we read the opinion of the Circuit Court of Appeals for the Second Circuit with the record in that case before us, we gather, quite clearly, that it not only adjudged the claims valid but determined their scope. All claims were in issue. The court found the fifteen we have stated valid. Though differing in terms they include narrow claims and broad claims. The narrow claims call for and name tempering agents, such as "oil," "castor oil," "vegetable oil." The broad claims, notably claims 2 and 18, call merely for a "tempering agent" without naming it. The art knew what a tempering agent was. It knew it was oil of some kind; and it knew of no other, unless it be glycerin which is a derivative of fats and oils. Hill discovered and disclosed nothing novel about that. He simply and broadly called for a tempering agent "such as oil," preferably,

"castor oil or a similar oil" having a given quality. The Circuit Court of Appeals for the Second Circuit found invention in the broad claims calling merely for a "tempering agent," and found they were infringed by the use of castor oil as such agent. Evidently for the purposes of that case the words "tempering agent" were construed to mean oil without limitation except as to function. The defendants used oil. If their tempering agent had been something other than oil, the problem of construing the broad claims might have been more difficult—at least, it would have been different. But in construing the claims with respect to the defendants' oil practice—and that is all the court could validly do—the Circuit Court of Appeals for the Second Circuit construed them with respect to the tempering agent of oil, and in doing so, very properly, we think, refused to restrict the broad claims to the specific limitations of the narrow ones. This must be a correct interpretation of that court's decision as to scope else it could not have found infringement of broad claims 2 and 18. Our understanding of the decree in that case is fortified by the opinion and decree of the same court in the later case of A. B. Dick Co. v. Shallcross Co., 42 F.(2d) 169, construing claim 18 of the same patent. That case, not being between the same parties, does not conclude the defendants. Neither is it binding on this court, yet through comity is very persuasive. Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 488, 20 S. Ct. 708, 44 L. Ed. 856. There the court construed broad claim 18, calling generally for "a tempering agent," as covering the tempering agent of oleic acid (red oil), the very infringing agent here in suit.

For these reasons, briefly stated, we discern no error in the court's finding that the decree in the Second Circuit is res judicata of the issues in this case.

Being compelled to study the record in both suits in order to decide the question of res judicata, we, at the same time, studied the prior art and, like the learned trial judge, gathered views as we went along which ripened toward the end into a firm conviction that the state of the prior art does not require or justify a construction of the broad claims of the patent that would so restrict their scope as to bring them within the range of the narrow claims and thereby enable the defendants, within their literal terms, to escape infringement.

The decree is in all respects affirmed.