## A. B. DICK CO. v. DUPLICATING MACHINE & SUPPLY CORPORATION et al.

## SAME v. KENSINGTON SUPPLY CO., Inc., et al.

## No. 474.

Circuit Court of Appeals, Second Circuit.
July 16, 1934.

Austin & Dix, of New York City (Albert M. Austin, Robert D. Murray, and Reuben T. Carlson, all of New York City, of counsel), for appellants.

Robert W. Byerly, Stephen H. Philbin, and Ralph M. Watson, all of New York City, for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

These consolidated suits were for infringement of patent No. 1,526,982 for a stencil sheet. Claim 16 only is relied upon and reads:

"16. A stencil-sheet adapted for conversion into a stencil by the impact of type and the like thereon, the same comprising an open, porous base having a coating including a soluble compound of cellulose, and a tempering means which forms with said compound a solid, homogeneous body which is type-impressible throughout an extended period of time."

The patent has been held valid by this court. A. B. Dick Co. v. Shallcross Co., Inc., 42 F.(2d) 169; A. B. Dick Co. v. Simplicator Corp., 34 F.(2d) 935, 937.

Appellants base their appeal on noninfringement. A stencil sheet is a sheet adapted to be converted into a stencil for multiplying copies with less equipment than by printing, particularly in machines which position the paper and stencil and apply ink, so that it passes through the apertures in the stencil and reaches the paper. A. B. Dick Co. v. Simplicator Corp., supra. In the Duplicating suit, the claimed infringing stencil sheet contained a small quantity of nitrocellulose and oleic acid as a tempering agent. In the Kensington suit, the alleged infringement consisted in the stencil sheet containing no cellulose compound; its ingredients were gelatin and a small amount of water, a mineral oil, and iron pigment.

We set forth the development of the stencil art in A. B. Dick Co. v. Simplicator Corp., supra, to which reference is here made. The modern stencil art began with the wax stencil of Broderick in 1888, a dry stencil (Wickelman v. A. B. Dick Co., 88 F. 264 [C. C. A. 2]), and improvements over Broderick came in the Dick patent, No. 562,590, by adding tempering agents, as shown in A. B. Dick Co. v. Wichelman, 108 F. 961 (C. C. A. 2), although the patent there was not sustained. Fuller's stencil (patent No. 1,244,188) used a gelatin. These were wet stencils, although dry in appearance and feel. A. B. Dick Co. v. Barnett, 288 F. 799 (C. C. A. 2); A. B. Dick Co. v. Underwood Typewriter Co., 252 F. 990 (C. C. A. 2). It was necessary to wet them prior to use. Hill then came along with the dry nitrocellulose stencil. It is water-repellant and requires no moistening during its life. After deterioration it cannot be restored by water and is useless. In addition to being sustained by this court, it has been sustained in the Third Circuit, Arlac Dry Stencil Corp. v. A. B. Dick Co., 46 F.(2d) 899, 900, and the Seventh Circuit, Heyer Duplicator Co. v. A. B. Dick Co., 59 F.(2d) 787, 788. In A. B. Dick Co. v. Shallcross, 42 F. (2d) 169, 170, we said that "the patent is limited to no formula, but only teaches that a proper coating for dry stencil sheets should have a small percentage of nitrocellulose and a large percentage of soft materials of an oily character."

And the Third Circuit said in Arlac Dry Stencil Corp. v. A. B. Dick Co., supra: "He (Hill) discloses, and claims in various forms, a stencil-sheet of a Yoshino base, coated with a cellulose ester, preferably pyroxylin enamel. * * * So to soften it and keep it pliable he added 'a suitable proportion (about 50 per cent.) of a tempering agent such as oil,' preferably 'castor oil or a similar oil having the power of forming with the cellulose ester and its solvent a homogeneous body.'"

And the Seventh Circuit in Heyer Duplicator Co. v. A. B. Dick Co., supra, said: "Clearly, the essential elements of the coating, described in the specifications, are a cellulose ester and a tempering agent such as an oil."

The patent in suit discloses but two cellulose compounds, two esters, cellulose nitrate and cellulose acetate; also one tempering agent, castor oil, but gives as a test for other suitable tempering agents that they have the power of forming with the cellulose ester and its solvent a homogeneous body.

The Kensington stencil contains no cellulose compound. Its principal ingredients comprise gelatin, an oil of much less viscosity than castor oil, a mineral oil with a small percentage of fatty acid, and 2 to 6 per cent. water. Prussian blue is used as a coloring, a coagulant, and may have other uses in a gelatin-water-oil stencil. The stencil is manufactured in Germany, and, while testimony was not produced as to its exact process of manufacture, there is testimony of an expert tending to show it was made by an emulsification method. It was also shown that oleic acid, as an equivalent of the mineral oil, could be emulsified to form a stencil coating. It is a wettable stencil, and, when thoroughly dried out by natural or artificial means, as by exposure to the atmosphere, it can be restored to good condition by moistening it. The Kensington Case presents the question of whether any stencil sheet with Yoshino paper, but containing no ingredient mentioned in the Hill patent, containing no cellulose compound, containing a tempering agent different from any mentioned, is within the terms of the claim in suit.

The appellee says that claim 16 is not limited to nitrocellulose or any cellulose compound, but may include any binding material that is strong and fluent. It says "tempering means" is limited to a permanent oil of non-hygroscopic character; that "type impressible throughout an extended period of time" imports into the claim a limitation on a type of stencil which remains in good operable condition without rewetting for a period (not less than one year) sufficient to make it commercial and noncompetitive.

Gelatin and nitrocellulose are not equivalent in this art. We pointed out in the case considered heretofore (A. B. Dick Co. v. Shallcross Co., supra) that "Doubtless there would be a minimum of nitrocellulose * * *

270

and such a proportion would be outside of the scope of the patent."

While the Kensington stencil is wettable and can be restored by moistening with water, Hill's nitrocellulose stencil cannot be restored by water. We said in A. B. Dick Co. v. Simplicator Corp., supra: "Cellulose compounds in general possess a considerable degree of hardness and toughness, and, unlike gelatin, a resistance to water."

■ The moisture content of the gelatin increases 25 per cent. in a moist atmosphere compared with 3 per cent. in a Hill stencil under similar conditions. The dissimilarities between gelatin made and nitrocellulose made stencils are pointed out, but the principal difference is that the former may be wetted and softened by water, whereas the latter is permanently dry and is discarded when it deteriorates. Nitrocellulose requires solvents like ether-alcohol, acetone-ethyl acetate; gelatin requires a solvent such as water and any change of the binder involves a change in the solvent, and this inevitably involves a different mode of manufacture. The solvent and tempering agent of cellulose compounds are miscible. The solvent and the oil of the Kensington stencil are not miscible. The coating of Hill's stencil is homogeneous in appearance. It results from a solution. The Kensington coating is granular resulting from an emulsion. "Type impressible throughout an extended period of time" means that the nitrocellulose stencil sheet of Hill is non-wettable and permanently dry— as long as the stencil lasts. This would distinguish gelatin stencils of the prior art which are wettable. There is no warrant in the patent or file wrapper for fixing an arbitrary time limit because of the use of the phrase in the claim "throughout an extended period of time". Holland Furniture Co. v. Perkins Glue Co., 277 U. S. 245, 257, 48 S. Ct. 474, 72 L. Ed. 868.

Water, an essential element of any gelatin stencil, combined with oil and gelatin as an emulsion, gives a stencil of a character different from Hill's stencil. Coatings of prior patents contained gelatin for stencils and were intended to hold enough water to stay soft without re-wetting. The Fuller patent, No. 1,244,188 (October, 1917), contained gelatin binder and a large quantity of tempering agent, including oleic acid. The Fuller patent, in addition to calling for a gelatin stencil composition "usable throughout an extended period of time," also contains claims to a gelatin oil (oleic acid) stencil composition.

In comparing methods of manufacture, composition, and functional efficiency, appellant's stencil follows Fuller's rather than Hill's patented stencil, and indeed Hill's patent marked an advance with respect to new ingredients (binder of cellulose) over Fuller's. The prior art precludes any broad interpretation of the claims of the Hill patent. Appellant's use of gelatin in stencil has had a different result by apparently different methods. Hill was the first to produce a commercial dry stencil, but that does not cover this appellant's stencil. Water is essential to the operation of a gelatin stencil sheet, however much any oil is used; water softens and swells the gelatin and keeps it in condition to retain the oil. It is the combination of gelatin, water, and oil which makes the sheet stencilizable for commercial use.

■ As has often been pointed out, no patent covers all the inventive conceptions of the patentee existing at the time when he procured it, but only such device, within the reasonable rule of equivalents applicable, as he describes and claims. Outlook Envelope Co. v. Genl. Paper Goods Mfg. Co., 239 F. 877 (C. C. A. 2); Loraine Development Co. v. Genl. Electric Co., 202 F. 215 (C. C. A. 2). Stencils, including dry stencils, were old, and binders and tempering agents were found in them. Nitrocellulose was new in the stencil art. No doctrine of functional efficiency can be extended to give to Hill a monopoly so as to include a stencil having a binder and a tempering agent which is different from that used by Hill and which may now have some commercial success.

■ Since we have concluded that gelatin is not the equivalent of nitrocellulose, there is no infringement in the Kensington Case for the reasons which we have expressed above.

Infringement is established in the Duplicating Case. We do not hold the Hill patent invalid.

Decree modified in accordance with this opinion.