**A. B. DICK CO. v. MARR.**

District Court, S. D. New York.
Sept. 8, 1942.

Robert W. Byerly, of New York City (Ralph M. Watson, of New York City, of counsel), for plaintiff.

Edward D. Bolton, of New York City, for defendant.

HULBERT, District Judge.

Plaintiff moves for an order confirming the report of the Special Master and overruling the defendant's objections thereto. Motion granted.

This action was for patent infringement, by the defendant, of plaintiff's Letters Patent No. 1,526,982 covering an improved stencil sheet. For a more detailed statement of the facts and explanation of process, see A. B. Dick Co. v. Shallcross Co., 2 Cir., 42 F.2d 169; A. B. Dick Co. v. Simplicator Corp., 2 Cir., 34 F.2d 935.

A trial was had before Judge Robert P. Patterson who, in an opinion dated June 2, 1932, found for the plaintiff and the interlocutory decree entered thereon referred the accounting, therein directed, to Thomas I. Crawford, Esq., as Special Master. He resigned before the proceedings conducted by him were completed. Upon consent of counsel, Judge Patterson thereupon made an order dated February 9, 1939, whereby the matter was referred to Morris Kirschstein, Esq., as Special Master. He concluded the accounting proceedings and reported to this court that the defendant had profited in the sum of $18,799.40 from his infringement and should account in said amount to the plaintiff.

The interlocutory judgment provided that the defendant account for all profits derived from his infringement of plaintiff's patent subsequent to February 28, 1930.

It appears from the testimony that, during the accounting period, the defendant conducted business both in New York and San Francisco; that subsequent to the interlocutory decree the defendant incorporated the San Francisco branch of his business.

The Special Master found that the defendant should account for all sales of infringing stencils sold either in his New York business or by the California corporation. Defendant objects to the inclusion of any sales of the latter upon the ground that said corporation, being a separate entity and not a party to this action, should not be compelled to account in this proceeding for any infringing sales unless brought into this proceeding by a supplemental bill or other proper manner.

The Special Master found that the defendant was the sole stockholder of the California corporation, which, it appears, was formed at the behest of one of the defendant's large creditors for reasons not here pertinent. The Special Master concluded that the California corporation was merely the alter ego of the defendant and the record supports that conclusion. It is self-evident that any profits resulting from infringing sales of the California branch would have to be accounted for by the defendant but for the incorporation of said business. To permit the defendant in such manner to circumvent the interlocutory decree would result, to say the least, in a grave injustice to the plaintiff. Compare Smith Metal Window Hardware Co. v. Yates, 2 Cir., 244 F. 793; New York Grape Sugar Co. v. American Grape Sugar Co., C.C., 42 F. 455, 456, 457. Equity will pierce the customary protective cloak of incorporation when necessary to prevent injustice or fraud. The fact that defendant incorporated this California business at the instance of a creditor does not excuse the fact that the business was still that of the defendant and that he was the sole stockholder of said corporation. Accordingly, defendant's objection that the Special Master improperly included the profits of the infringing sales of the California corporation in the account, is dismissed.

The defendant also objects to the holding of the Special Master that the so-called "M.O.37" and "M.O." stencil sheets infringe plaintiff's patent.

On the trial of this action before Judge Patterson a so-called "A.F." stencil sheet was held to infringe plaintiff's patent.

During the course of the accounting it developed that defendant sold other sheets designated as "M.O.37" and "M.O." on the manufacturer's invoices to the defendant. Both plaintiff and defendant introduced proof as to the chemical composition of the disputed sheets and the Special Master

found that both the "M.O.37" and "M.O." sheets infringed plaintiff's patent. Defendant objects to these conclusions.

The decision of Judge Patterson adjudged in part that claims 2 and 18 of the plaintiff's patent were valid and infringed by defendant's "A.F." stencil sheet. Said claims are as follows:

"2. A stencil-sheet adapted for conversion into a stencil by the impact of type and the like thereon, the same comprising a base having a type-impressible coating including a cellulose compound and a tempering agent."

"18. A stencil-sheet adapted for conversion into a stencil by the impact of type and the like thereon, the same comprising an open texture base having a coating including a cellulose ester and a tempering agent."

In passing upon the scope of plaintiff's patent, Judge Patterson said it was "for a sheet coated with a mixture of nitrocellulose and oily materials, the nitrocellulose in small percentage, to impart strength and binding quality, the oily materials in large percentage to keep the sheet type-impressible without moistening."

In the interlocutory decree the defendant was perpetually restrained from making "any stencil sheet comprising an open porous base having a coating including a large percentage of oily material, and a small percentage of nitrocellulose distributed through the oily material as a binder therefor, whether or not such stencil-sheet was made by successive coatings of wax and tempered nitrocellulose."

The Circuit Court of Appeals for this Circuit in A. B. Dick Co. v. Shallcross Corp., supra, stated, with respect to plaintiff's patent, 42 F.2d at page 170: "The patent is limited to no formula, but only teaches that a proper coating for dry stencil sheets should have a small percentage of nitocellulose and a large percentage of soft materials of an oily character."

The Special Master said at page 8 of his report: "The 'M.O.37' stencil consists of an open porous base of Yoshino paper having a coating of the following composition; nitrocellulose—12.3% (weight of stencil), or 14.7% (weight of coating); liquid oily material—63.7% (weight of stencil), or 75.9% (weight of coating)."

The testimony relating to the "M.O.37" sheet was taken before Special Master Crawford. Special Master 'Kirschstein adopted his conclusion regarding the chemical content of the sheet in question from the findings of Special Master Crawford.

Dr. Grosvenor performed certain tests on the "M.O.37" similar to those he had made during the trial of this action before Judge Patterson with respect to the "A.F." sheet and testified that the results were substantially the same. Dr. Grosvenor's tests amply justify the Special Master's conclusion that the "M.O.37" sheet is a dry stencil sheet which consists of a Yoshino paper base overlaid with a coating comprised of a small percentage of nitrocellulose and a large percentage of soft material of an oily character, the nitrocellulose being distributed throughout the oily material as a binder therefor, and the liquid oily material serving to temper the nitrocellulose and make it type-impressible without moistening. The mere fact that different materials are used in combination with the nitrocellulose to produce such a sheet does not take the latter sheet out of the infringing classification. Here we have the nitrocellulose combined with other ingredients—"soft materials of an oily character"—producing a homogeneous matter which is type-impressible without moistening.

The contention of the defendant that the ingredients which are combined with nitrocellulose to produce the "M.O.37" sheet are not "soft materials of an oily character" is refuted by the testimony and tests of Dr. Grosvenor.

There is no doubt in my mind but that the ingredients used in combination with the nitrocellulose are ingredients "such as an oil" and serve as a temporary agent for the nitrocellulose. See A. B. Dick v. Shallcross, supra.

The complaint of the defendant that Dr. Grosvenor should have performed in the presence of the Master the tests which he had made on defendant's stencils is without substantial merit. The defendant examined plaintiff's expert as to such tests and the Special Master obviously believed the testimony of the expert. No substantial prejudice resulted to the defendant from the procedure complained of.

On the record before me I cannot say that the conclusions reached by the Special Masters are erroneous. Accordingly, defendant's objections are overruled.

With respect to the "M.O." stencils, the Special Master found that the petroleum ether extract utilized in said sheets combined with the nitrocellulose to form a homogeneous, ink-impervious coating, which

is type-impressible without moistening. As in the case of "M.O.37" stencil this conclusion of the Special Master is predicated upon the testimony and tests of Dr. Grosvenor and corroborated in part by Dr. Worden. The fact that the percentage of this oily material is less in the "M.O." sheets than in the "A.F." and "M.O.37" sheets is immaterial since the patent in question covers any such combination wherein the nitrocellulose acts as a binder for the oily material as here.

■ The record amply sustains the findings of the Special Master.

■ It was proper, in my opinion, for the Special Master to determine whether the "M.O.37" and "M.O." stencil sheets infringed plaintiff's patent inasmuch as the interlocutory decree directs the defendant to account for all infringing stencils sold by him subsequent to February 28, 1930. Of necessity the Special Master had to pass upon the question of infringement of plaintiff's patent by the other stencils in order to prepare an appropriate account. See Louis Metzger & Co. v. Berlin, 2 Cir., 194 F. 426, 427; Consol. Rubber Tire Co. v. Diamond Rubber Co., D.C., 226 F. 455, 462; Flat Slab Patent Co. v. Turner, 8 Cir., 285 F. 257, 272.

Based upon the record, I feel that the composition of defendant's stencils "M.O. 37" and "M.O." is only colorably different from the "A.F." stencil, and since the scope of plaintiff's patent had been adjudicated by Judge Patterson, the problem before the Special Master was to ascertain whether or not the ingredients of defendant's "M.O. 37" and "M.O." stencils were to be characterized as "of an oily character" as explained in the Shallcross case, supra.

Both stencils contained cellulose, which the Circuit Court of Appeals in A. B. Dick Co. v. Duplicating Machine & Supply Corp., 2 Cir., 72 F.2d 268, at page 270 termed an advance in the art of stencils. The fact that defendant's "M.O.37" and "M.O." stencils had other different ingredients is immaterial providing such ingredients combined to function with the nitrocellulose as in the "A.F." stencil. The chemical composition of the ingredients is unimportant as they temper the nitrocellulose to form a homogeneous coating. As the court said in the Shallcross case, supra, 42 F.2d at page 171; "The homogeneity referred to is not chemical but practical, and such homogeneity defendant's coating attains."

■ To say at this time, approximately ten years after the interlocutory decree, that such issues should have been introduced by a supplemental bill, or otherwise, would be sacrificing substance to form. The defendant has had his day in court upon these issues. That he was precluded from showing the prior art is immaterial since plaintiff's patent had already been adjudicated valid and the issue was whether the defendant had availed himself of the inventive features of such patent.

Accordingly, the action of the Special Master in including the "M.O.37" and "M. O." stencils in the account, is approved and the defendant's objection thereto overruled.

■ The adoption of the Burns account by the Special Master is approved. Defendant's account, Special Master's Exhibit 5A, did not attempt to segregate the defendant's profitable sales from the unprofitable in conformity with the Supreme Court decision in Duplate Corp. v. Triplex Co., 298 U.S. 448, 457, 458, 56 S.Ct. 792, 80 L. Ed. 1274.

Burns, an expert accountant, testified that such segregation was possible, with reasonable exactitude, and prepared an account on behalf of the plaintiff toward that end.

I find no reason to disturb the adoption of this account by the Special Master.

■ The defendant's objection that a credit of $9,014.66 should have been allowed by the Master for stencil paper on hand at the beginning of the accounting period is without merit, and I do not find any error because of the allowance of $3,122.48 of such claimed credit. Defendant's burden to prove this claimed credit (Gordon v. Turco-Halvah Co., 2 Cir., 247 F. 487, 491) was not sustained. The record shows that the San Francisco inventory at the beginning of the accounting period totaled $9,012.44. At the end of the accounting period this inventory approximated $5,000. No accurate figures were available for the New York office. Applying the ratio between stencil material and other merchandise of 77.82 and 22.18 (utilized by defendant's account) to the resulting figure of $4,012.44, one arrives at $3,122.48, allowed by the Master.

■ Defendant's objection No. 65 (legal expenses) is overruled. It is apparent that the Master thought the disallowed services were connected with the infringement suit or with the incorporation of the California business. Under such circum-

stances his ruling was correct. Philadelphia Rubber Works Co. v. United States Reclaiming Works, 2 Cir., 277 F. 171, 179; Oil Well Imp. Co. v. Acme Foundry & Machine Co., 8 Cir., 31 F.2d 898, 900; see also Gordon v. Turco-Halvah Co. supra.

Likewise, objections 66 and 67 fall for failure of defendant to definitely establish his right to such credits. With respect to No. 67 the Master properly applied the $748.01 received from Carbon Crafters in reduction of the latter's debt to defendant.

It cannot be said that the Master's action in allowing $1,044.80 instead of $2,913.94 for traveling expenses was arbitrary and it is approved.

All of defendant's accounts submitted to the Master were in the "aggregate" form instead of the "segregate" form of account, contrary to the decision in the Duplate case, 298 U.S. 448, 456, 56 S.Ct. 792, 80 L.Ed. 1274. While it is true that Burns used average cost, defendant's records made such action necessary. As the Supreme Court said in the Duplate case, supra, at page 458 of 298 U.S., at page 796 of 56 S. Ct., 80 L.Ed. 1274: "Average cost, even if not identical with actual cost, is the best approximation known to accountants. Cf. Norfolk & Western R. Co. v. North Carolina, 297 U.S. 682, 56 S.Ct. 625, 80 L.Ed. 977, * * *. The defendants will not be suffered to charge the complainant with the losses of unprofitable transactions because the gains of the profitable ones cannot be reckoned to a nicety."

I am of the opinion that the Burns' form of account affords substantial justice to both plaintiff and defendant.

The Special Master leaves for determination by the court plaintiff's request that the sum of $2,372.75 representing plaintiff's expenses in connection with the preparation of the Burns account be assessed as additional costs against the defendant. It is disallowed. Merrell Soule Co. v. Powdered Milk Co., 2 Cir., 7 F.2d 297, 298, 299.

Concerning plaintiff's contention that defendant was a wilfull infringer, the record is not sufficiently free from doubt to enable such a finding, and I refuse to so find.

In this memorandum I have endeavored to pass specifically upon substantially all of the objections briefed by the defendant. He filed 87 exceptions to the Master's report, many of which contained numerous subdivisions. As to all exceptions not specifically passed upon, they are to be deemed overruled.

Finally, reasonable compensation must be awarded the Special Master for his services. His has been a laborious task, performed with consummate patience and skill. He will be allowed the sum of $4,000.

Settle order on notice.